Frederick DAVIS, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2010–SC–000108–MR.

Supreme Court of Kentucky.

April 26, 2012.

Linda Roberts Horsman, Frankfort, KY, for Appellant.

Jack Conway, Attorney General of Kentucky, Bryan Darwin Morrow, Office of the Attorney General, Frankfort, KY, for Appellee.

Opinion of the Court by Chief Justice MINTON.

A circuit court jury convicted Frederick Davis of the crimes of first-degree manslaughter and first-degree attempted manslaughter. The trial court sentenced him to a total of thirty years' imprisonment. Davis now appeals as a matter of right,[1] contending (1) the trial court erred by empanelling a new jury to determine whether to run his sentences for the two crimes concurrently or consecutively; and (2) even if the trial court properly empanelled a new jury, it employed erroneous procedures for the second penalty phase.

On review, we affirm the trial court's judgment.

## I. PROCEDURAL HISTORY.

After hearing the evidence in the first, guilt phase of trial, the jury convicted Davis of first-degree manslaughter and first-degree attempted manslaughter. At the conclusion of the second, penalty phase of trial, the jury recommended the maximum sentences of twenty years' imprisonment and ten years' imprisonment respec-

---

1. Ky. Const. § 110(2)(b).

2. Emphasis added.

tively, to run consecutively for a total of thirty years' imprisonment. Before finally sentencing Davis, the trial judge discovered an error in the verdict form the jury used in the penalty phase.

Jury Instruction No. 6 read, "We recommend that the punishment fixed for the Defendant under Counts One and Two be served concurrently (at the same time) or consecutively (one after the other), **in whole or in part** as follows."[2] But the verdict form gave the jury only two options; it could recommend the sentences run concurrently or consecutively. The trial judge determined that the verdict form erroneously failed to offer the jury a third option: to run the two sentences partially consecutively and partially concurrently (in whole or in part).

To remedy the perceived error, the trial judge empanelled a new jury for the limited purpose of recommending whether the ten and twenty year sentences of imprisonment recommended by the first jury should run concurrently or consecutively, in whole or in part. The second jury again recommended the sentences run consecutively for a total of thirty years' imprisonment. The trial court sentenced Davis in accordance with this recommendation and entered a final judgment.

## II. ANALYSIS.

### A. The Trial Court Did Not Abuse Its Discretion by Empanelling a New Jury.

■ Davis and the Commonwealth agree that the verdict form erroneously failed to offer the jury the option to recommend running the sentences concurrently or consecutively, in whole or in part.[3] But

---

3. In n. 21 of *Lawson v. Commonwealth*, 85 S.W.3d 571, 584 (Ky.2002), this Court "suggest[ed] a more informative and correct verdict form in this case would read:

Davis claims that upon discovering the error, the trial court was required to run his sentences concurrently.[4] We disagree with Davis's argument and find that the trial court acted within its discretion by empanelling a new jury before entering a final judgment of conviction.

■ Although not binding on a trial judge,[5] a jury "shall recommend" whether a defendant's sentences should run concurrently or consecutively.[6] This Court has recognized that due process entitles a defendant to this jury recommendation,[7] which "is far from meaningless or pro forma, and ... has 'significance, meaning, and importance.'"[8] An error in the jury's recommendation on this matter is typically not harmless.[9]

When the trial court empanelled the new jury, it had not yet sentenced Davis or entered a final judgment. So the rule that a trial court lacks power to amend a judgment ten days after the entry of that

judgment is not implicated.[10] Also inapplicable to this situation is KRS 532.110(2), which requires sentences to run concurrently when a judgment is silent on the matter. Essentially, this issue concerns the trial court's oversight and conduct of a trial. And we find the trial court acted within its discretion to conduct the trial by empanelling a new jury to decide the limited issue of whether to run Davis's sentences concurrently or consecutively, in whole or in part.

■ "The trial judge has broad discretion in designating the order of trial so as to protect the various rights of competing interests."[11] And we will not disturb an action of the trial court in conducting a trial, unless clearly erroneous[12] or "arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[13]

The trial court's decision to empanel a new jury is not clearly erroneous, arbitrary, unreasonable, unfair, or unsupport-

---

We, the jury, recommend that the sentences fixed for the Defendant under Counts 1 and 2 above shall be served concurrently (at the same time) or consecutively (one to begin after the completion of the other), in whole or in part, as follows ..." (emphasis added).

But this suggestion was obiter dictum; and the Court has never directly held that jury instructions and verdict forms must include the phrase, "in whole or in part." Because neither the Commonwealth nor Davis argues that the trial court's original verdict form was correct without this third option, we do not address this issue.

4. The Commonwealth concedes that this issue is preserved, so we will review it as preserved error.

5. *Nichols v. Commonwealth*, 839 S.W.2d 263, 265 (Ky.1992) (citation omitted).

6. Kentucky Revised Statutes (KRS) 532.055(2).

7. *Lawson*, 85 S.W.3d at 582.

8. *Id.* at 581 (citations omitted).

9. *Id.* ("[W]e decline the Commonwealth's invitation to find that the error in this case is harmless.") (emphasis added).

10. *Winstead v. Commonwealth*, 327 S.W.3d 479, 485–86 (Ky.2010) ("Generally speaking, a trial court lacks power to amend a judgment ten days after the entry of that judgment.").

11. *Kinser v. Commonwealth*, 741 S.W.2d 648, 652 (Ky.1987).

12. *Veach v. Commonwealth*, 572 S.W.2d 417, 419 (Ky.1978) (citation omitted).

13. *See Shaw v. Commonwealth*, 497 S.W.2d 706, 710 (Ky.1973) ("Trial courts are given a wide discretion in the matter of permitting a party to reopen in order to introduce new evidence. We find no abuse of that discretion, here....."); *See also Peters v. Commonwealth*, 345 S.W.3d 838, 844 (Ky.2011) (defining the abuse of discretion standard) (citation omitted).

ed by sound legal principles. Upon discovering the potential error in the initial verdict form, the trial judge requested briefing from Davis and the Commonwealth regarding whether error occurred and to determine a reasonable and fair remedy. Unfortunately, neither party submitted briefs on the matter.[14] The trial court explained, on the record, that it determined the only just resolution of the issue was to empanel a new jury for a second, limited penalty phase. By its action, the trial court sought to protect Davis's due process rights and prevent a potentially erroneous judgment. The trial court has broad discretion to conduct a trial in a way that protects these rights and interests.

This case is distinguishable from *Stoker v. Commonwealth*,[15] which Davis relies on to support his argument. In *Stoker*, the trial court followed the jury's recommendation to run co-defendants' multiple sentences consecutively.[16] This Court determined that the jury instructions erroneously failed to give the jury the option of running some sentences concurrently and other sentences consecutively.[17] So

we remanded to the trial court with instructions to run the defendants' sentences concurrently.[18] Unlike in *Stoker*, the trial court here never entered a judgment on a jury verdict based upon erroneous instructions.[19] The trial court avoided that result by empanelling a new jury and providing them with a verdict form that corrected the perceived error.[20]

We find that the trial court acted within its discretion to conduct a trial when it empanelled a new jury to decide whether to run Davis's sentences concurrently or consecutively, in whole or in part.

## B. The Trial Court Appropriately Conducted the Second Penalty Phase.

■ Davis argues that even if the trial court properly empanelled a new jury, it employed erroneous procedures for the second penalty phase.; Specifically, he claims the trial court unfairly threatened to play the videotape of the entire three-day guilt phase of the trial if the Commonwealth and Davis failed to agree on a summary of the evidence to present at the new penalty phase.[21] We disagree.

---

14. We commend the trial court for seeking, a just resolution of the issue despite an apparent lack of interest or diligence from the attorneys.

15. 828 S.W.2d 619 (Ky.1992).

16. *Id.* at 621.

17. *Id.* at 627.

18. *Id.* at 628.

19. We also note that the case the Commonwealth relies on, *Lawson,* 85 S.W.3d 571, is not directly on point. In *Lawson,* this Court ruled that an error in the jury's recommendation to run the defendant's sentences consecutively warranted a new penalty phase. *Id.* at 582. But, similar to *Stoker,* the holding in *Lawson* concerns the appropriate remedy on appeal. Here, we are deciding whether the

trial court acted within its discretion by empanelling a new jury before entering a judgment based on an allegedly erroneous jury recommendation.

20. As stated above, we are not deciding whether the trial court's original verdict form was erroneous.

21. Davis claims that if the parties cannot agree on an evidentiary summary, *Boone* requires the trial court to provide one. We do not examine this issue because Davis and the Commonwealth ultimately did agree on a summary of the evidence.

Davis also asserts that: the jury empanelled for the new penalty phase was at the end of a busy term; the jurors were told their services would end by December 15 and "did not contemplate that their holidays would be interrupted by further jury duty"; twenty-three of sixty-five members of the panel were ab-

*Boone v. Commonwealth*[22] provides an outline of matters that "might be pertinent" for a penalty-phase jury to consider in addition to those listed in KRS 532.055(2).[23] Rather than reading a complete transcript of the guilt phase to the jury,

> we believe it would suffice, in most cases, for the jury to have read to it (a) the charges from the indictment of which the defendant was found guilty; (b) any charge of which the defendant was found guilty which was a lesser-included offense to a charge set out in the indictment; (c) the jury instructions given by the trial court at the guilt phase; and (d) the jury's verdict.
>
> In addition to the matters set out above, should both sides agree, each could read a concise summary of the evidence which it offered and which was admitted at the guilt phase of the earlier trial. Similarly, the closing arguments of both sides from the guilt phase could be read or projected if both agreed.[24]

█ *Boone* does not establish strict limits on the types of evidence admissible in a new penalty-phase trial.[25] It "recognizes broad discretion on the part of the trial court in determining the admissibility of evidence in re-sentencing."[26] And "while encouraging summaries for the sake of expediting re-sentencing trials, this Court does not require that summaries always be presented in lieu of live testimony, reading transcripts of prior trial testimony, or playing videotapes of prior trial testimony."[27]

We find that the trial court acted well within its discretion when it told Davis and the Commonwealth that it would play the entire guilt phase of the trial for the jury if they did not provide a summary of the evidence. The trial court sought to proceed with the second penalty phase in a timely manner. But it appears that Davis and the Commonwealth did not actively pursue an agreed upon summary of the evidence. The trial court expressed frustration with the "cavalier" attitude both attorneys displayed for the issue. And the parties ultimately did agree on an evidentiary summary, so the; trial court did not show the jury the whole guilt-phase videotape.[28] We do not find anything unfair or erroneous in the trial court's treatment of the issue.

sent; and that "the prosecutor argued their relative lack of knowledge about the case in opening statements, setting the notion of a maximum verdict." But Davis does not claim that these facts led to any legal error. And they do not affect this Court's finding.

22. 821 S.W.2d 813 (Ky.1992).

23. *Id.* at 814.

24. *Id.* at 814–15.

25. *St. Clair v. Commonwealth,* 319 S.W.3d 300, 311 (Ky.2010) (*citing Thompson v. Commonwealth,* 147 S.W.3d 22, 36–37 (Ky.2004)).

26. *Id.* (citation omitted).

27. *Id.*

28. In keeping with *Boone,* the trial court presented the new penalty phase jury with: the indictment, a summary of the evidence from the guilt phase of the case that Davis and the Commonwealth agreed to, taped testimony of two psychologists that testified in the guilt phase, the previous jury instructions and verdict forms, the charges of which Davis was found guilty, all prior penalty phase testimony, live testimony from one victim concerning the extent of his injuries, the previous sentences imposed, and live closing arguments.

### III. CONCLUSION.

For the foregoing reasons, we affirm the judgment of the trial court.

All sitting. All concur.